8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10  SUSAN HACKER,                    )  No. ED CV 10-39 PJW
                                     )
11              Plaintiff,           )
                                     )
12        v.                         )  MEMORANDUM OPINION AND ORDER
                                     )
13  MICHAEL J. ASTRUE,               )
    Commissioner of the             )
14  Social Security Administration,  )
                                     )
15              Defendant.           )
    _____)

16

17                    I.   INTRODUCTION

18        Plaintiff Susan Hacker appeals a decision by Defendant Social

19  Security Administration ("the Agency"), denying her application for

20  Supplemental Security Income ("SSI") benefits.  She claims that the

21  Administrative Law Judge ("ALJ") erred when he: (1) failed to consider

22  all of her treating physician's evaluations; (2) failed to properly

23  consider a consulting doctor's findings; (3) concluded that

24  Plaintiff's impairments were not severe; and (4) failed to determine

25  Plaintiff's residual functional capacity.  (Joint Stip. at 3-6, 8-11,

26  12-15, 16-18.)  Because the Agency's decision that Plaintiff was not

27  disabled within the meaning of the Social Security Act is not

28  supported by substantial evidence, it is reversed.

II.  SUMMARY OF PROCEEDINGS

Plaintiff applied for SSI on May 1, 2007, alleging that she had been disabled since January 1, 2005, due to mental illness and depression. (Administrative Record ("AR") 9, 95-100.) The Agency denied her application initially and again on reconsideration. (AR 38-41, 44-48.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 53-54, 60-63.) On March 5, 2009, Plaintiff appeared with counsel and testified at the hearing. (AR 20-35.) On September 15, 2009, the ALJ issued a decision denying benefits. (AR 9-15.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-4.) She then commenced this action.

III.  ANALYSIS

A.  The ALJ's Failure to Consider the Treating Psychiatrist's 2005 Evaluation

Plaintiff contends that the ALJ erred by failing to consider a December 21, 2005 evaluation performed by her treating psychiatrist Guia Montenegro. (Joint Stip. at 3-6.) Dr. Montenegro determined at that time that Plaintiff suffered from Major Depressive Disorder, recurrent, severe with psychotic features, and assessed a Global Assessment of Functioning score, or "GAF," of 50.[1] (AR 186.) For the reasons set forth below, the Court concludes that the ALJ should have considered the 2005 evaluation and his failure to do so was error.

_____

[1] A GAF score reflects a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34.

"By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Thus, a treating physician's opinion that is well-supported and not inconsistent with other substantial evidence in the record will be given controlling weight. *Id.* An ALJ may not reject the uncontroverted opinion of a treating physician without giving "clear and convincing reasons" for doing so. *Id.* at 631-32. Even if the treating physician's opinion is contradicted by another physician, the ALJ may not reject it "without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)(quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

In his decision denying benefits, the ALJ failed to consider treating psychiatrist Montenegro's 2005 evaluation or the accompanying GAF score. (AR 13.)[2] Dr. Montenegro was a treating physician and the ALJ should have considered her 2005 evaluation in determining whether Plaintiff was disabled in 2007. *See Embrey v. Bowen*, 849 F.2d 418,

---

[2]   It is unclear why the ALJ did not consider these records. Presumably, it is because he believed that res judicata applied in this case as evidenced by his statement at the administrative hearing that he was only considering Plaintiff's condition as of May 2007, because a prior application had been denied. (AR 24.)  If the ALJ was relying on res judicata in this case, he erred.  The prior application--an application for disability benefits submitted in January 2006--was not denied on the merits. (AR 88.)  It was denied because Plaintiff had not worked enough quarters to be eligible for disability benefits. (AR 88.)  This rule, known as the "20/40" rule, requires disability claimants to have worked and paid social security taxes 20 out of the last 40 quarters preceding the date of their application to qualify for relief. *See* 20 C.F.R. § 404.130(b); *see also Harvell v. Chater*, 87 F.3d 371, 373 (9th Cir. 1996) (upholding constitutionality of 20/40 rule).  Thus, since the earlier application was not decided on the merits, res judicata did not apply.

3

421 (9th Cir. 1988).  Similarly, while an ALJ is not required to rely on GAF scores in formulating his decision, see *Howard v. Commissioner*, 276 F.3d 235, 241 (6th Cir. 2002), the scores are probative of a claimant's mental health on a given day and should at least be acknowledged.  *See*, *e.g., Hacker v. Astrue,* 2008 WL 4224952, at *5 n.2 (W.D. Okla. Sept. 10, 2008) ("[I]t was error for the administrative law judge to not at least address the GAF scores and explain why they were not relevant.")

The Agency suggests that the ALJ's silent disregard of the 2005 assessments was proper because they were "wholly irrelevant" to Plaintiff's 2007 SSI application and because the ALJ considered Dr. Montenegro's 2007 treatment records.  (Joint Stip. at 6-7.)  The Court disagrees.  The 2005 evidence had some relevance to Plaintiff's condition in 2007.  As to the ALJ's consideration of the 2007 records, that consideration did not remedy the ALJ's failure to consider the 2005 records.  Moreover, even if these were the ALJ's reasons for ignoring the 2005 records, neither the Court nor the Agency is at liberty to rely on them because the ALJ did not include them in his decision.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Having concluded that the ALJ erred is not the end of the inquiry, however.  In order for Plaintiff to prevail, the Court must also determine that the error affected the outcome of the case.  *See Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error in social security context).  In a situation such as this, where the ALJ has not provided any reason for ignoring the evidence, the Court can conclude that the error is harmless only if it "can confidently conclude that no reasonable ALJ, when fully crediting [the evidence], could have reached a different disability

4

determination." *Id*. at 1056; *see, also*, *Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (explaining that, under *Stout*, where ALJ provides no reason for rejecting evidence at issue, reviewing court must consider whether ALJ would have made different decision if he relied on the rejected evidence). The Court is not able to say that that is the case, here. It seems likely that a reasonable ALJ could have determined based on the 2005 records that Plaintiff's mental/ psychological impairment was severe in 2007. These records establish that Plaintiff had a mental/psychiatric breakdown in March 2005. And, though she voluntarily presented herself at a hospital for treatment, she was involuntarily committed after she was evaluated and determined to be a danger. (AR 148.) Further, though her condition improved by May 2007, the relevant date for Plaintiff's benefits claim, the Court cannot say with certainty that a reasonable ALJ considering the 2005 records in conjunction with the 2007 records would have concluded that Plaintiff's impairment was not severe.

For these reasons, the Court concludes that the ALJ erred when he failed to consider the 2005 records and that the error was not harmless. As such, the issue is remanded to the Agency for further consideration.

B. <u>The Consultant's Evaluation</u>

In her second claim of error, Plaintiff contends that the ALJ erred in failing to consider the opinion of consulting psychiatrist Robert Paxton. (Joint Stip. at 8-11.) Plaintiff argues that the ALJ was required to give Dr. Paxton's findings some weight, unless the ALJ specifically chose to reject them. (Joint Stip. at 9-11.) For the following reasons, the Court agrees.

ALJs are required to consider the opinions of non-examining, consulting doctors. 20 C.F.R. §§ 404.1527(f)(1)-(2); 416.927(f)(1)-(2); Social Security Ruling 96-6p; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (suggesting that a non-examining doctor's opinion is entitled to at least some weight). In order to reject the opinion of a consulting doctor, the ALJ must provide specific and legitimate reasons for doing so. *See Dogsleep v. Astrue*, 266 F. App'x 664, 665 (9th Cir. 2008) (explaining ALJ may not ignore findings of reviewing physician and must either accept them or give specific and legitimate reasons for rejecting them); *Blanquet v. Astrue*, No. 08-0032, 2008 WL 5411460, at *3 (C.D. Cal. Dec. 23, 2008); *see also* Social Security Ruling 96-6p ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Reviewing psychiatrist Robert Paxton determined that Plaintiff would have "moderate" difficulties in maintaining social functioning and concentration, persistence, and pace. (AR 199.) The ALJ found at step two that Plaintiff's mental impairment resulted in no limitations in social functioning and a mild limitation in maintaining concentration, persistence, and pace. (AR 14.) Thus, the ALJ implicitly rejected Dr. Paxton's findings to the contrary. But the ALJ never explained the basis for his rejection of those findings. This was error. The ALJ was required to explain why he was rejecting them. Further, the Court does not find the error to be harmless. Had this ALJ, or any ALJ, determined that Plaintiff had moderate difficulties in maintaining social functioning and in maintaining

6

concentration, persistence, and pace, he or she would likely have also concluded at step two that Plaintiff had a severe impairment. For these reasons, this issue, too, will be remanded for further consideration.

C. <u>The ALJ's Step-Two Determination</u>

Plaintiff next contends that the ALJ erred by concluding at step two that Plaintiff did not have a severe mental impairment. (Joint Stip. at 12-15.) As previewed in the previous discussion, this finding was inconsistent with Dr. Paxton's opinion and the ALJ failed to provide an explanation as to why. As such, remand is required for further development of the issue.

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it significantly limits an individual's ability to do basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1521(a).[3] An impairment may be found "not severe" only if it is a "slight abnormality" that "has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)); 20 C.F.R. §§ 404.1521(a), 416.921(a). Under Social Security Ruling 85-28, a "determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s)

---

[3] The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical activities, like walking, standing, sitting, pushing, carrying; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b).

and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities[.]" The step-two inquiry is a "de minimis screening device." *See Smolen*, 80 F.3d at 1290 (citing *Bowen*, 482 U.S. at 153-54).

Here, as set forth above, the ALJ found that Plaintiff's psychological impairment would cause her to have only mild limitations in activities of daily living and in concentration, persistence, and pace and no limitation in social functioning. (AR 14.) But these findings are contradicted by Dr. Paxton's findings that Plaintiff would, in fact, have moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence, and pace. (AR 199.) Importantly, the Regulations set out a correlation between these factors and the step-two "severe impairment" test. Under 20 C.F.R. § 404.1520a(d)(1), if the Agency rates the degree of limitation in either of these areas (and a third, activities of daily living) as "none" or "mild," it will "generally conclude that [an] impairment(s) is not severe . . . ." By inference, it seems, then that, where, as here, a claimant's impairments are rated moderate, the Agency should conclude at step two that the impairment is severe.[4]

Also, as noted above, the ALJ's step-two finding was made without considering Dr. Montenegro's 2005 mental health records, which should have been considered. As such, remand is required so that the ALJ can

_____

[4] The Court recognizes that, despite finding Plaintiff moderately limited in these two areas, Dr. Paxton concluded that Plaintiff's impairment was not severe. (AR 191.) This appears to be an internal inconsistency that should have been resolved by the Agency. *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 603 (9th Cir. 1999).

address these issues in light of the Court's rulings.

Plaintiff contends that the ALJ also erred when he failed to consider the side effects of her medications in assessing the severity of her impairment. She does not state what side effects she is referring to or direct the Court to the record cite that supports her claim. Though the Court has uncovered a few instances where Plaintiff complained that she was experiencing side effects (AR 130, 182), the record is replete with other instances where she denied any side effects. (AR 168, 169, 172, 173, 176, 177.) As such, this argument is rejected. On remand, however, Plaintiff can present evidence regarding side effects and the impact they have on her ability to work.

D. The ALJ's Failure to Assess Residual Functional Capacity

In her final claim of error, Plaintiff contends that the ALJ erred by neglecting to determine her residual functional capacity. (Joint Stip. at 16-18.) An ALJ is required to assess a claimant's residual functional capacity if he finds a severe impairment at step two. *See* 20 C.F.R. § 416.920; *Tacket v. Apfel*, 180 F.3d 1094, 1098, 1100 (9th Cir. 1999). On remand, the ALJ will have to address this issue if he concludes at step two that Plaintiff's impairment is severe.

IV. CONCLUSION

For the reasons set forth above, the Court concludes that the Agency's decision denying benefits is not supported by substantial

evidence.  The decision is, therefore, reversed and the case is remanded for further consideration in light of the Court's decision.[5]

IT IS SO ORDERED.

Dated: June 22, 2011

_Patrick J. Walsh_
_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\HACKER, S 39\Memo_Opinion.wpd

---

[5]  Plaintiff has requested that the Court reverse the Agency's decision and order it to pay benefits.  The Court recognizes it has the authority to grant such relief but finds that this case does not merit such relief because the outstanding issues require further development before it will be clear whether Plaintiff is entitled to benefits.